**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 15-23651 |
| LANNY R. GIBRICK, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ ) | Hon. Judge A. Benjamin Goldgar |
| | ) | |
| ROBERT GOLDEN, | ) | Room 642 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. |
| | ) | |
| LANNY R. GIBRICK d/b/a ALAN'S | ) | |
| DRAPERIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ADVERSARY COMPLAINT IN**
**OBJECTION TO DISCHARGE OF DEBT AND FOR OTHER RELIEF**

NOW COMES Plaintiff/Creditor ROBERT GOLDEN ("Golden"), by and through his attorney, The Law Offices of Brendan R. Appel, LLC, and pursuant to Federal Rule of Bankruptcy Procedure 7001, complains against Defendant/Debtor LANNY R. GIBRICK ("Gibrick"), an Individual and Debtor in Case No. 15-23651 doing business as ALAN's DRAPERIES, INC., an involuntarily dissolved Illinois corporation, as follows:

**Introduction**

1.     Plaintiff brings this adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure to object to the proposed discharge of debt incurred by Defendant Gibrick accrued by a judgment entered in Plaintiff's favor in the Circuit Court of Cook County.

1

## Jurisdiction & Venue

2.     This Court has jurisdiction over this adversary proceeding pursuant to 28 USC § 157 and 1334.

3.     This is a core proceeding pursuant to 28 USC § 157(b)(2).

4.     Venue is proper in this District pursuant to 28 USC § 1409(a).

5.     Plaintiff consents to entry of final orders or judgments by the bankruptcy court pursuant to Rule 7008.

## The Parties

6.     Plaintiff Golden is an Individual with a principal place of residence in Glenview, Illinois (the "Property").

7.     Defendant Gibrick is an Individual whose place of residence is, on information and belief, 501 Thorndale Drive in Buffalo Grove, Illinois. Gibrick was the sole corporate officer of Alan's Draperies, Inc. ("Alan's Draperies"), with a registered business address at 1912 Raymond Drive in Northbrook, Illinois. On information and belief, Alan's Draperies was involuntarily dissolved by the Illinois Secretary of State on or about October 31, 2013.

## Background

8.     On or about March 18, 2014, the parties contracted for Gibrick to provide and install various window treatments including sheers, blinds and drapes (hereinafter "the Agreement"). A copy of the Order form memorializing this contract is attached hereto as **Exhibit A**.

9.     Under the Agreement, Gibrick was to provide and install the window treatments no later than five weeks from the date the order was placed. Golden told Gibrick that it was important to get the window treatments delivered and installed before the hot summer weather

arrived. Gibrick indicated that he understood Golden's concerns and specifically tailored his sales pitch for energy-efficient window treatments. Gibrick indicated that he understood the five week delivery date was important to Golden and his family because summer was quickly approaching.

10.     Pursuant to the Agreement, Golden provided an up-front deposit of $6,000.00. Golden's deposit check was cashed on or about March 20, 2014.

11.     Five weeks after placing the order, Golden called Gibrick for a progress report. Gibrick told Golden that the blinds would need an additional two weeks, and the drapes were "in the works."

12.     On May 9, 2014, seven weeks after the order was placed, Golden contacted Gibrick again to check on the status of the blinds. Gibrick said that they would arrive from the manufacturer the following Monday, May 12, 2014, and promised to telephone Golden.

13.     On May 12, 2014, Gibrick texted Golden and said that the blinds were in his storage facility and he would check on them and call with an install date on May 13, 2014. Gibrick never called on May 13, 2014.

14.     On May 14, 2014, in a telephone conversation with Golden, Gibrick alleged that he had ordered the wrong blinds from the manufacturer. Gibrick followed up with a text, "Sorry I am a big idiot." Gibrick promised to call on May 15, 2014 once he had talked to the manufacturer with arrival dates of the corrected shipment. Golden told Gibrick that if he did not have the treatments in his possession by May 31, 2014, he wanted to cancel the order. Gibrick said that he understood, and that he would get a rebate from the manufacturer for Golden.

15.     On May 16, 2014, Golden was exhausted with Gibrick's endless delays, excuses and avoidances, and texted Gibrick that he wanted to cancel the order and have his $6,000.00

deposit refunded. This was nine weeks since the order was placed, and four weeks after the latest original promised delivery and installation date. Gibrick immediately texted back and promised that all the window treatments would be installed by May 30, 2014.

16.     Gibrick promised Golden a rebate in exchange for an additional two weeks to complete performance under the contract. When Golden inquired about the rebate, Gibrick said that it would be "over $600" in the form of a pre-loaded American Express card. In exchange for this promise, Golden granted Gibrick an extension.

17.     On May 29, 2014, the parties scheduled installation of the window treatments for 2:00 p.m. the following day, Friday, May 30, 2014.

18.     On the morning of May 30, 2014, Gibrick called Golden and alleged he did not have the window treatments as he had expected, and they had been delivered to a logistic facility. Later that afternoon, Gibrick texted Golden, "Not good news these are not your boxes."

19.     Gibrick did not show up at the scheduled 2:00 p.m. appointment on May 30, 2014 to install the window treatments. Gibrick texted Golden that he was at his brother-in-law's 50th birthday party, and would call the following day, May 31, 2014.

20.     Golden never received the promised call from Gibrick on May 31, 2014.

21.     On Monday, June 2, 2014, after multiple attempts by Golden to contact him, Gibrick texted, "My wife's brothers (sic) friend made us go to his lake Geneva (sic) house play golf Saturday and Sunday and we all watched the hawks crazy weekend (sic)." Later that day, Gibrick left a voicemail with Golden that the window treatments would be in the next week.

22.     On June 3, 2014, Golden and Gibrick spoke on the phone. *Gibrick admitted that he had never had Golden's order shipped from the manufacturer.* Gibrick had been lying about the progress of Golden's order all along. Golden told Gibrick to cancel the order and refund his

deposit.

23.     In exchange for one final chance to complete the job, Gibrick promised Golden a rebate of $2,000.00 in the form of a pre-loaded American Express Card. Gibrick also said that he had the sheers for the windows in his possession and could install those the following day, June 4, 2014. In light of this promise, Golden granted Gibrick a final chance to perform. Golden granted Gibrick until June 13, 2014 to complete installation in exchange for a tracking and order number from the manufacturer, a $2,000.00 pre-loaded American Express credit card, and a letter of apology to Golden's wife. Gibrick agreed that these conditions were fair, and that if he didn't meet the conditions he would refund Golden his deposit by June 14, 2014 at the latest.

24.     On June 4, 2014, Gibrick arrived at the property and installed the window sheers. Gibrick did not have the letter of apology or pre-loaded American Express Credit Card, as promised.

25.     Since June 4, 2014, Golden has made numerous unsuccessful attempts to contact Gibrick regarding installation of the remaining treatments, a refund of his $6,000.00 deposit, or the promised $2,000.00. Gibrick has not responded to any of these attempts to contact him, and has done no further work to install the window treatments.

26.     On August 4, 2014, Golden's legal representative sent Gibrick a demand letter via certified mail seeking the refund of his deposit. A copy of this letter is attached hereto as **Exhibit B**. Gibrick never responded to the letter. Golden's legal representative received a return of service receipt indicating that Gibrick had received the demand letter on August 6, 2014. A copy of this receipt is attached hereto as **Exhibit C**. Golden's legal representative also sent a copy of the demand letter to Alan's Draperies business address, but service of that letter was refused.

## Underlying Litigation & Judgment

27.    On or about September 8, 2014, Golden filed a three-count lawsuit against Gibrick in the Circuit Court of Cook County, Case No. 2014 M2 001791. The lawsuit was supported by a Verified Complaint which set forth claims for Breach of Contract, violations of the Illinois Consumer Fraud & Deceptive Business Practices Act (the "Act"), and Common Law Fraud.

28.    Gibrick was personally served with the lawsuit and a summons by the Lake County Sheriff on September 30, 2014. The summons directed Gibrick to file his appearance by October 7, 2014 and to appear before the Honorable Judge Roger G. Fein for status on November 12, 2014 at 9:30 a.m.

29.    On November 12, 2014, Gibrick failed to appear. The Circuit Court entered a default judgment in Golden's favor, and continued the case to December 16, 2014 for prove-up on Golden's damages.

30.    On December 16, 2014, the Circuit Court entered a judgment in Golden's favor for $16,374.23, itemized as $8,000.00 in compensatory damages, $5,000.00 in punitive damages for fraud, and $3,374.23 in attorney's fees and costs pursuant to the Act (the "Judgment"). A copy of the default judgment order is attached hereto as **Exhibit D**.

## COUNT I
## Objection to Discharge From an Individual Debt Pursuant to 11 USC § 523(a)(2)

31.    Plaintiff restates and re-alleges the allegations of Paragraphs 1-30 as though fully set forth herein.

32.    11 USC § 523(a)(2) provides that a discharge under the bankruptcy code "does not discharge an individual debtor from any debt for… money, property, services, or an

extension, renewal, or refinancing of credit to the extent obtained by…false pretenses, a false representation, or actual fraud…"

33.     In order to establish a discharge under § 523(a)(2), a creditor must show that (1) the debtor made a false representation or omission; (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive; and (3) upon which the creditor justifiably relied. *Santiago v. Hernandez*, 425 B.R. 709, 719 (N.D. Ill. 2011).

34.     The elements of fraud under Illinois law are substantially the same as the requirements for discharge under § 523(a)(2). *Santiago*, 425 B.R. at 719.

35.     When the debtor knowingly or recklessly makes false representations that he knows or should know will induce another to act, the court can infer an intent to deceive. *Id.* at 720.

36.     A creditor may establish fraud under § 523(a)(2) by showing that the contractor-debtor executed a contract while never intending to comply with its terms. *Santiago,* 425 B.R. at 720.

37.     Gibrick made multiple false representations to Golden regarding the installation of blinds and window treatments, the scheduling of the installation, and the refund of Golden's deposit.

38.     By his own admission on June 3, 2014, Gibrick never even ordered Golden's drapes or blinds despite frequent promises that their installation was imminent.

39.     Gibrick never intended to return Golden's deposit despite multiple promises that he would.

40.     Gibrick never intended to furnish Golden with a $2,000.00 rebate despite multiple promises to do so.

41.     By his own admission, Gibrick knew his representations regarding the installation of the window treatments were false at the time that he made them, or in the alternative, Gibrick had reckless disregard for the truth of his representations.

42.     Gibrick made the false representations with the intent to deceive Golden into entering into the contract, and to deceive Golden into cancel the contract.

43.     Golden justifiably relied on Gibrick's false representations.

44.     Gibrick never intended to perform the terms of the contact. Gibrick made false contractual promises with the intent of deceiving Golden into entering into the contract. In the alternative, Gibrick recklessly made the contractual promises and should have known that he would likely be unable to abide by them. Gibrick recklessly made these promises with the intent to deceive Golden as to Gibrick's ability to perform.

45.     The award of attorney's fees under the Act rests in the sound discretion of the trial court. *Id*. at 725.

46.     If a plaintiff can demonstrate gross deception, the determination as to whether plaintiff is entitled to punitive damages lies with the trier of fact. *Home Savings & Loan Assoc. v. Schneider*, 108 Ill. 2d 277, 285 (Ill. 1985).

47.     Here, the trial court had the discretion to award attorney's fees for Gibrick's violations of the Act and to award punitive damages. Gibrick's repeated lies constituted gross deception. Moreover, Gibrick's unjust retention of Golden's $6,000.00 security deposit constitutes a conversion.

48.     Prior to filing for bankruptcy, Gibrick was engaged in a serial pattern of home repair fraud with multiple victims, Golden and the victim in Lake County Criminal Case No. 15-CF-1444, *People v. Gibrick*, being just two of them. Gibrick's acts and deceptions are so outrageous that exemplary damages are warranted.

49.     This Honorable Court should declare the full amount of the Judgment non-dischargeable pursuant to 11 USC § 523(a)(2) on account of the debt being obtained by Gibrick's false pretenses, false representation, and actual fraud.

50.     This Honorable Court should enter an additional award of attorney's fees to Golden pursuant to the Act to reimburse for his costs and attorney's fees in prosecuting this adversary action to prevent Gibrick from benefiting from his fraud.

WHEREFORE, Plaintiff-Creditor ROBERT GOLDEN asks this Honorable Court to enter a judgment of nondischargeability under 11 U.S.C. § 523(a)(2) in his favor, and against Defendant-Debtor LANNY R. GIBRICK in the amount of $16,374.23, grant attorney's fees to Plaintiff-Creditor pursuant to the Illinois Deceptive Business Practices Act, and for such further relief as this Court deems just and necessary.

**Dated:**       **January 6, 2016**              Respectfully submitted,

The Law Offices of Brendan R. Appel, LLC
Attorney for Plaintiff-Creditor

The Law Offices of Brendan R. Appel, LLC
Brendan R. Appel
191 Waukegan Road, Suite 360
Northfield, Illinois 60062
(847) 730-4224
(847) 730-4114 (facsimile)
IL ARDC: 6271877

# <u>EXHIBIT A</u>

# Alan's Draperies, Inc.

Complete line of window fashions including
Hunter Douglas & more... Shutters •
Draperies/Valances • Upholstery • Bedspreads

1912 Raymond Drive, Northbrook, IL 60062  ph: (847) 498-8005  fax: (847) 498-8004  www.alansdraperies.com

Name Golden          Date 3-11-14

Address 3051 Independence          Apt House

City Glenview          Zip _____          Phone 847-724-0967

#3299

| | | | |
|---|---|---|---|
| | Hunter Douglas (2850 - 5 Lens | | |
| | 2 - Shutters 10% | | |
| Family | 10- Shutters D2-457 Thermal | | |
| Room | 5 - Top Down Batt or UltraGlide | | |
| | 5 - Powerise System | 5820 | |
| Kitchen | 2 - Shutters | | |
| | | | |
| | 5 - Blackout Shutters with Top Down | 2940 | |
| | Batt or Ultra Glide Systems | | |
| | | | |
| | | | |
| | Silhouette | +490 If | |
| | | Vertical | |
| | All Installed Complete | 12,700 | |

**BALANCE DUE ON DELIVERY C.O.D.**

Buyer _____
Salesperson Lanny _____

**½ BALANCE REQUIRED ON ALL ORDERS. BALANCE C.O.D.**

Orders processed for work not subject to cancellation. Delivery
subject to unavoidable delays of fabric, deliveries, strike, fires,
or any other unavoidable factors. This order, as written,
constitutes the entire agreement between Buyer and Seller.

Amount of Order _____

Sales Tax _____

Total _____

Deposit _____

Balance _____

EXHIBIT
A

# **EXHIBIT B**

# Law Offices of Brendan R. Appel, llc

191 Waukegan Road
Suite 360
Northfield, Illinois 60093

Telephone: 847.730.4224
Facsimile:  847.730.4114



Brendan R. Appel
*Managing Attorney*
bappel@balegal.com

Alex P. Blair
*Associate Attorney*
ablair@balegal.com

(1 of 2)

August 4, 2014

**<u>VIA CERTIFIED MAIL AND FASCIMILE (847-498-8004)</u>**

Lanny Gibrick
501 Thorndale Drive
Buffalo Grove, IL 60089

*Re:    Alan's Draperies Order No. 3294*

Dear Mr. Gibrick:

Be advised this firm has been retained to file suit against you on behalf of Robert and Dina Golden.  The Goldens placed a $12,700.00 order with your business for window treatments on or about March 11, 2014. You promised delivery and installation their goods within five weeks, and the Goldens gave you a deposit of $6,000.00. Instead of performing under the contract, you treated the Goldens to bumbling unprofessionalism and inexplicable delays, offering only hollow excuses instead of performance. On one occasion you not only failed to appear for a prescheduled installation, but your excuse for failing to contact the Goldens after your no-show was that you were "dragged" to Lake Geneva for a golf weekend. To prevent the Goldens from cancelling their order after your incompetence came to light, you then modified the contract by offering the Goldens $2,000 in exchange for additional weeks to perform.

Although you did install the window sheers on June 4, 2014, since that date you have consistently avoided the Goldens' calls and letters. You materially breached your contract with the Goldens and have also committed home repair fraud. In Illinois, perpetrators of home repair fraud are not only liable for actual damages, but also the homeowner's attorney's fees.  I have drafted, and am prepared to file at any time, a lawsuit against you personally for breach of contract and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Act").

Should filing of that lawsuit be necessary, I will seek the unlawfully-retained $6,000.00 deposit, the promised $2,000.00, all of our attorney's fees and punitive damages. However, for the purposes of settlement, the Goldens will accept in full satisfaction of their claims against you the full amount of their deposit, **$6,000.00 via certified check delivered to this firm within 10 days of your receipt of this letter, and a fully executed lien waiver**. To the extent that you provided the Goldens goods and services for the sheers, there exists a set-off by the contracted-for $2,000.00. This letter serves as a demand letter pursuant to Section 2Q of the Act. I urge you, for the first time in the course of your dealings, to do right by the Goldens.



**EXHIBIT**

B

# LAW OFFICES OF BRENDAN R. APPEL, LLC

191 Waukegan Road
Suite 360
Northfield, Illinois 60093

Telephone: 847.730.4224
Facsimile: 847.730.4114



BRENDAN R. APPEL
*Managing Attorney*
bappel@balegal.com

ALEX P. BLAIR
*Associate Attorney*
ablair@balegal.com

(2 of 2)

Very truly yours,

**LAW OFFICES OF BRENDAN R. APPEL, LLC**

Alex P. Blair

CC: Alan's Draperies, Robert & Dina Golden

# **EXHIBIT C**

**CERTIFIED MAIL**

LAW OFFICES OF BRENDAN R. APPEL, LLC
191 Waukegan Road
Suite 360
Northfield, IL 60093

PS Form 3800 6/02

9407 1118 9956 1940 9871 23

**COMPLETE THIS SECTION ON DELIVERY**

**A. Signature:** ( ☐ Addressee or ☐ Agent)

X _____

**B. Received By:** (Please Print Clearly)

_____

**C. Date of Delivery**

8/6/14

**D. Addressee's Address** (If Different From Address Used by Sender.)

_____

Secondary Address / Suite / Apt. / Floor   (Please Print Clearly)

_____

Delivery Address

_____

| City | State | ZIP + 4 Code |

**RETURN RECEIPT REQUESTED**

Article Addressed To:

LANNY GIBRICK
501 Thorndale Drive
Buffalo Grove IL 60089-6707

**EXHIBIT**

_C_

# **EXHIBIT D**

(This form replaces CCMD 0637-2 thru 6)

(Rev. 3/16/01)  CCM 0637

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
SECOND   MUNICIPAL DISTRICT

ROBERT GOLDEN
                              **Plaintiff**
                    v.

No. 2014 M2 001791

LANNY GIBRICK
                              **Defendant**

## ORDER

This matter having come before the court, the court having jurisdiction as being fully advised in the premises:

**IT IS ORDERED AS FOLLOWS:**

4219 ☐

4001 ☒  **XP Default Judgment for Plaintiff For $** 16,374.23 **and Costs.**

9207 ☐  **Payment Plan ☐ yes ☐ no.**

9293 ☐  **Assess costs** _____

4002 ☐  **XP Default Judgment for Defendant For $** _____ **and Costs.**

4219 ☐  **(on counter complaint or third party complaint)**

4293 ☐  **4293 Assess costs** _____

4001 ☒  **XP Default Judgment For Plaintiff**

4301 ☐  **XP Default Judgment for specific Litigant**

4219 ☐

8001 ☐  **Judgment for Plaintiff after trial for $** _____ **and Costs.**

9207 ☐  **Payment Plan ☐ yes ☐ no.**

4293 ☐  **Assess costs** _____

8002 ☐  **Judgment for Defendant after Trial**

8301 ☐  **Judgment for Specific Litigant after Trial in favor of**

_____ **For $** _____ **and Costs.**

☒  **See Attached Order** Judgment itemized as follows: $8,000 compensatory damages
$5,000 punitive damages for fraud
$3,374.23 in attorney's fees and costs.

Atty. No. 38354

Name: Brendan Appel      **Enter:** _____, _____

Attorney For: Plaintiff

Address: 191 Waukegan Rd Ste 360

City/Zip: Northfield IL 60093      **Judge**

Associate Judge Jeffery L. Warnick

DEC 1 6 2014

Circuit Court-2024

Associate Judge Jeffery L. Warnick

DEC 1 6 2014 Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**